HILLSIDE SECURITIES COMPANY v. JOHN B. MINTER, ROBERT LEE FERRILL, ZARIUS B. HUNTINGTON, EARL DENNY, LAURA CAMPBELL and TOPEKA BRIDGE & CONSTRUCTION COMPANY, Appellants.

In Banc, August 14, 1923.

1. **BRIDGES: Illegal Contract: According to Plans of Contractor: Without Competitive Bidding: Injunction.** The statute (Sec. 10734, R. S. 1919) pertaining to the letting of contracts for the construction of bridges by the county court, and requiring that all work let by contract, of the estimated cost of over five hundred dollars, shall be let, after due advertisement, upon bids made upon maps, plans, specifications and profiles previously prepared by the Highway Engineer, prescribes an exclusive method, and does not contemplate the letting of contracts upon plans other than those submitted by the Highway Engineer. So that where the county court ordered the Highway Engineer to prepare plans and specifications for the construction of six bridges, and thereafter ordered him to advertise for bids for the construction thereof in accordance with such plans and specifications, and thereafter a contractor submitted no bid upon such plans, but did submit a bid based on such specifications and upon alternate plans prepared by himself, and such bid, without a bid by any other person or an opportunity given to any other person to bid, was accepted by the county court, the contract awarded to said con-

tractor was illegal and void; and although the alternate plans prepared by the contractor were as good as those prepared by the Highway Engineer, and the bridges were constructed in full compliance with the specifications prepared by him, and the costs did not exceed his estimates, and the bridges were reasonably worth all the county court agreed to pay for them, and were accepted, an injunction brought by a taxpayer will lie to prevent the County Treasurer from paying warrants issued to said contractor in payment for the bridges.

2. ———: County Court: Special Agent. In the matter of contracting for the construction of bridges at an estimated cost in excess of five hundred dollars, the county court is not a general agent of the county, but its powers are limited and restricted by statute, and every person who deals with it is bound to know that the county is not bound by its contracts unless in making them it follows the express provisions of the statute.

3. ———: Illegal Contract: Suit by Taxpayer to Enjoin Payment of Warrants: Reasonable Value: Possession of Bridges: Equities Between County and Contractor. In a suit brought by a taxpayer to enjoin the county court and county treasurer from paying warrants issued to the contractor in payment for bridges constructed under an illegal and void contract, the right of the contractor to recover the reasonable value of the bridges, or in lieu thereof to be restored to possession of them, is not involved. The issue is the validity of the warrants *vel non*. The contract being void, because the county court did not follow the statute governing the making of such contracts, the warrants are void, and the county is not bound to pay them, nor can it legally pay them; and the fact that the court had power to enter into a valid contract, that the bridges were constructed in good faith according to the void contract, that they were reasonably worth the contract price and were accepted by the county court, has no place in the case, since the taxpayer has the clear right to challenge the authority of the county court to pay out public money under a void contract, and he has no control over the bridges, and his right to make the challenge is in no wise dependent upon equities that may arise between the county and contractor.

4. ———: Recovery under Void Contract: Implied Contract. Where the contract for the construction of bridges was void because the county court did not follow the express provisions of the statute governing the making of such contracts, the contractor cannot recover from the county either the contract price or the reasonable value of the bridges. To permit such recovery would permit the county to do indirectly that which it is forbidden by law to do

directly, and would furnish a ready means of evading the law. The law never implies an obligation to do that which it forbids the party to agree to do.

5. ———: ———: **Saving Statute: Section 9507: Good Faith.** Section 9507, Revised Statutes 1919, providing that "if a claim against a county be for work and labor done or materials furnished in good faith, under contract with the county authorities, . . . the claimant, if he shall have fulfilled his contract, shall be entitled to recover the just value of such work, labor and material, though such authorities may not, in making such contract, have pursued the form of proceeding prescribed by law," has no application to a contract which the county court had no power to make.

6. ———: ———: ———: **Section 2574: County Court's Power to Audit.** Section 2574, Revised Statutes 1919, providing that the county court shall have power to audit and settle all demands against the county, applies only to lawful demands against the county, and has no application to a claim based upon a void contract.

7. ———: ———: **Laches: Injunction.** Laches do not apply where defendant was in no way misled by plaintiff's conduct. Where the contract entered into by the county court for the construction of bridges was not based on the plans prepared by the Highway Engineer, but on alternate plans prepared by the contractor, and there is no evidence showing when plaintiff acquired knowledge that the contract was awarded on such alternate plan, upon which others were not permitted to bid after proper advertisement, and the contractor had full knowledge of the pendency of the suit from the time it was filed, and went ahead and completed the bridges, an injunction brought by a taxpayer to prevent the payment of warrants subsequently issued in settlement of the bridges then only begun, is not barred by laches.

Appeal from Clay Circuit Court.—*Hon. Ralph Hughes, Judge.*

AFFIRMED.

*D. R. Hite, Theodore Emerson, Claude Coppinger, James S. Simrall* and *Claude Hardwicke* for appellants.

(1) Neither the contract involved nor the performance thereof was *malum prohibitum*, or required doing

any act the law expressly prohibited or made void; and the contract, if it had been entered into in conformity with the statutes, would have been valid and binding on both parties thereto; and the bridges were constructed and the county took possession of them under the contract. Such being the case, it was the duty of the county to pay for the bridges, and it could not be enjoined from complying with such duty; and even if the contract had been *malum prohibitum*, payment of warrants issued for the bridges could not properly have been enjoined without restoration to the contractor of possession of the bridges. R. S. 1919, secs. 10733, 10734, 10735; State Board of Agriculture v. Railroad, 47 Ind. 407; Chapman v. Douglas County, 107 U. S. 355; Green v. Okanogan County, 111 Pac. 226; Sparks v. Jasper County, 213 Mo. 237; Seaman v. Levee District, 219 Mo. 29; Roeder v. Robertson, 202 Mo. 522; Simpson v. Stoddard County, 173 Mo. 466. (2) The bridge company had a statutory right to recover for the bridges constructed; so the county court had a right to pay for them. R. S. 1919, sec. 9507; Bryson v. Johnson, 100 Mo. 76. (3) The county court had a right to buy and pay for the bridges as they were constructed, even if there had been no contract for their construction. R. S. 1919, sec. 2574. (4) No threatened damage, or invasion of its rights, against which plaintiff was entitled to an injunction, was shown by the evidence. On the contrary, it was shown that there was no such damage. So the injunction should have been denied. Rollins v. Latham, 134 Mo. 472; Green v. Okanogan County, 111 Pac. 226. (3) If plaintiff ever had right to equitable relief, it was lost by delay in asserting such right. Great Western Ry. v. Oxford, 3 De Gex M. & G. 359; Tasch v. Adams, 10 Cush. 252; Brown v. Messick, 18 Neb. 355; Kellog v. Eby, 15 Ohio St. 67; Prettyman v. Tazwell County, 19 Ill. 406; Reisner v. Strong, 24 Kan. 297; Meistrell v. County Commrs., 76 Kan. 319. (6) The injunction, if permanent, may cause great inconvenience to the people of Clay County, and

plaintiff could have lost but little if anything, if it had been denied; so it should have been denied. 22 Cyc. 784, 785.

*Lathrop, Morrow, Fox & Moore, Martin E. Lawson* and *Lawson & Hale* for respondent.

(1) The contract between the county and the bridge company, not being entered into in the mode and manner prescribed by statute, is wholly illegal and void. Mo. Constitution, art. 4, sec. 48; R. S. 1919, sec. 10734; 9 Corpus Juris, 439; 15 Corpus Juris, 542-3; Wolcott v. Lawrence County, 26 Mo. 272; Heidelberg v. St. Francois Co., 100 Mo. 69; Chippewa Bridge Co. v. Durand, 122 Wis. 85, 106 Am. St. 939; Tiedeman on Municipal Corp. sec. 173; Beach on Public Corp. sec. 698; Dillon's Municipal Corp. (4 Ed.) sec. 457; Reams v. Cooley, 171 Cal. 150, 1917 Am. Ann. Cas. 1261; Zottman v. San Francisco, 20 Cal. 96, 81 Am. Dec. 100; Head v. Ins. Co., 2 Cranch, 156; State v. Pullman, 23 Wash. 583; Anderson v. Ripley County, 181 Mo. 58; Moss v. Kauffman, 131 Mo. 429; Saline County v. Wilson, 61 Mo. 237; State ex rel. v. Mackin, 200 Mo. App. 422; Sparks v. Jasper County, 213 Mo. 230; Dolezal v. Bostick, 139 Pac. (Okla.) 964; Green v. Okanogan, 111 Pac. (Wash.) 226; Hannan v. Board of Education, 30 L. R. A. (N. S.) 214; Fones Bros. Hdw. Co. v. Erb, 54 Ark. 645; State ex rel. Cook v. Detroit, 26 Mich. 263; Ricketson v. Milwaukee, 105 Wis. 591; Baltimore v. Flack, 104 Md. 107; Holmes v. Detroit, 120 Mich. 226; McMullin v. Hoffman, 174 U. S. 639. (2) The contract is void not merely because the method prescribed by statute was not followed, but because the county itself has no power to make such contract in any manner other than in that prescribed by statute. The adoption of the prescribed mode is a jurisdictional prerequisite to the exercise of that power at all. Zottman v. San Francisco, 81 Am. Dec. 100; Wolcott v. Lawrence Co., 26 Mo. 277; Heidelberg v. St. Francois

Co., 100 Mo. 69; Chippewa Bridge Co. v. Durand, 106
Am. St. 950, 122 Wis. 85; Reams v. Cooley, Ann. Cas.
1917 A, 1260, 171 Cal. 150; Head v. Ins. Co., 2 Cranch,
156; Moss v. Kauffman, 131 Mo. 429; State ex rel. v.
Harris, 96 Mo. 37; Book v. Earl, 87 Mo. 246, 256; Saline
Co. v. Wilson, 61 Mo. 237; State ex rel. v. Mackin, 200
Mo. App. 422; Sparks v. Jasper County, 213 Mo. 232.
(3)   There is no such thing known to the law as ratifi-
cation by a county of a void contract, or of estoppel of
the county or of a taxpayer to deny its validity.   State
v. Pullman, 83 Am. St. 836; Wolcott v. Lawrence Co., 26
Mo. 278; Heidelberg v. St. Francois Co., 100 Mo. 76;
Zottman v. San Francisco, 81 Am. Dec. 103; Sturgeon
v. Hampton, 88 Mo. 213; State ex rel. v. Mackin, 200 Mo.
App. 427; Cox v. Mignery, 126 Mo. App. 676; Perkinson
v. Hoolan, 182 Mo. 194; Wheeler v. Poplar Bluff, 149
Mo. 46; Newberry v. Fox, 37 Minn. 141; Portland v.
Bituminous Paving Co., 33 Ore. 307; Chippewa Bridge
Co. v. Durand, 106 Am. St. 939; McMullin v. Hoffman,
174 U. S. 654.   (4) · Where the statute prescribes the
mode and manner by which the county may contract, any
attempt made otherwise than as prescribed by statute is
not binding or obligatory as a contract.   In such case
no cause of action on a *quantum meruit* can arise, and
the doctrine of implied liability has no application.
Reams v. Cooley, Ann. Cas. 1917 A, 1260, 171 Cal. 150;
9 Corpus Juris, 441, 442; Chippewa Bridge Co. v. Durand,
106 Am. St. 950; Zottman v. San Francisco, 81 Am. Dec.
104; Brady v. New York, 16 How. Pr. 432; State v.
·Pullman, 83 Am. St. 839, 23 Wash. 583; Anderson v.
Ripley Co., 181 Mo. 60; Keating v. City of Kansas, 84 Mo.
119; McMullin v. Hoffman, 174 U. S. 654; Ft. Scott v.
·Brok. Co., 117 Fed. 51; Addis v. Pittsburgh, 85 Pa. St.
379.   (5)   Injunction may be had by any interested tax-
payer to prevent the county officials from paying out
public money on a void and illegal contract.   Shackel-
ford v. Jefferson City, 167 Mo. App. 62; Matthis v.
Cameron, 62 Mo. '504; 15 Corpus Juris, 561; R. S. 1919,

sec. 1969; Black v. Ross, 37 Mo. App. 257; Dolezal v. Bostick, 41 Okla. 743; Hannan v. Board of Education, 30 L. R. A. (N. S.) 231, 107 Pac. (Okla.) 646; Newmeyer v. Railway, 52 Mo. 89; Ranney v. Bader, 67 Mo. 479; Chippewa Bridge Co. v. Durand, 106 Am. St. 948; Book v. Earl, 87 Mo. 248; Kellogg v. School Dist., 13 Okla. 285. (6). Even though the contract had been entered into by the county and the contractor in good faith and work done by the contractor in compliance therewith, that would constitute no defense, nor would it affect the tax-payer's right to injunction. Mo. Constitution, art. 4, sec. 48; Chippewa Bridge Co. v. Durand, 106 Am. St. 947; Wolcott v. Lawrence Co., 26 Mo. 277; Black v. Ross, 37 Mo. App. 257; Dolezal v. Bostick, 41 Okla. 743; 15 Corpus Juris, 541; Hannan v. Board of Education, 30 L. R. A. (N. S.) 230; Reams v. Cooley, Ann. Cas. 1917A, 1262; State v. Pullman, 83 Am. St. 836; Anderson v. Ripley Co., 181 Mo. 60; Sturgeon v. Hampton, 88 Mo. 214; Railroad v. Hatton, 102 Mo. 56; Railroad v. Wayne Co., 125 Mo. 357; Book v. Earl, 87 Mo. 256. (7) The fact that if the contract in controversy is held void it may work a hardship on the contractor, is no defense to this action. The contractor knew the facts and ought to have known the law. It suffers only what it ought to have anticipated. R. S. 1919, sec. 10734; 9 Corpus Juris, 441-2; Wolcott v. Lawrence Co., 26 Mo. 272; Mo. Constitution, art. 4, sec. 48; Heidelberg v. St. Francois Co., 100 Mo. 69; Chippewa Bridge Co. v. Durand, 122 Wis. 85; Reams v. Cooley, Ann. Cas. 1917A, 1263; Zottman v. San Francisco, 81 Am. Dec. 103; State v. Pullman, 23 Wash. 583; Anderson v. Ripley Co., 181 Mo. 60; Moss v. Kauffman, 131 Mo. 429; Book v. Earl, 87 Mo. 256; State ex rel. v. Mackin, 200 Mo. App. 426; Sparks v. Jasper County, 213 Mo. 230. (8) Even if the method used in letting the contract had secured the best results obtainable for the county, that fact would have constituted no defense to this action. State ex rel. v. Mackin, 200 Mo. App. 425; Book v. Earl, 87 Mo. 256; Chippewa Bridge Co. v. Du-

rand, 106 Am. St. 950; Reams v. Cooley, Ann. Cas. 1917A, 1260.   (9)   Since the contractor could not recover in a direct action against the county on the contract involved, its rights are in no way prejudiced by the fact that this action was not brought immediately after the contract was made.  Plaintiff was not guilty of laches, nor is it estopped to maintain this action.   Dolezal v. Bostick, 139 Pac. 964; Wolcott v. Lawrence Co., 26 Mo. 272; Heidelberg v. St. Francois Co., 100 Mo. 69; Chippewa Bridge Co. v. Durand, 106 Am. St. 931; Reams v. Cooley, 1917A, Ann. Cas. 1260; Book v. Earl, 87 Mo. 246; State ex rel. v. Mackin, 200 Mo. App. 422; Perkinson v. Hoolan, 182 Mo. 189; 21 Corpus Juris, 217, 255; Troll v. St. Louis, 257 Mo. 660. (10) Actual knowledge of the unlawful use of public money by the county court is necessary to deprive a taxpayer of the right to object on the ground of laches.   21 Corpus Juris, 255; Black v. Detroit, 119 Mich. 571; Engstad v. Dinnie, 8 N. Dak. 1.

DAVID E. BLAIR, J.—From a judgment of the Clay County Circuit Court, granting plaintiff (respondent) a permanent injunction against defendants (appellants), an appeal was granted to this court. The amount involved is sufficient to fix our jurisdiction.

Plaintiff is a corporation and instituted this action as a taxpayer of Clay County to enjoin defendants, who are the county judges of such county, from issuing certain county warrants in payment for bridges built by the defendant Topeka Bridge & Construction Company; to enjoin said bridge company from collecting such warrants; to enjoin defendant Earl Denny, County Surveyor of said county and *ex officio* County Highway Engineer, from certifying estimates of progress in the work of constructing said bridges to the county court for payment, and to enjoin defendant Laura Chapman, as Treasurer of said county, from paying out any money of the county upon any warrants issued in payment for said bridges.

The suit was filed January 3, 1922. All of the appellants here, except the bridge company, were made defendants, and thereafter the evidence was heard at the March term, 1922, of said court. The bridge company was thereafter brought in as a defendant, and at the following term the cause proceeded against all the defendants and the trial court entered judgment against all the defendants in accordance with the prayer of the petition.

The facts are not complicated and are practically undisputed. The county court ordered defendant Denny, as Highway Engineer, to prepare plans, specifications and estimates of cost for a number of bridges and culverts in Clay County, and thereafter ordered him to advertise for bids for the construction thereof in accordance with such plans and specifications. The contract for the construction of six of the bridges, known as Wilkerson Creek, Irminger, Raymond, King, Morrow and Lightburn bridges, was awarded to the Topeka Bridge & Construction Company in a lump sum five per cent less than the aggregate of its bids for constructing the six bridges separately. Such bridge company submitted no bid based upon the *plans* prepared by the Highway Engineer, but such bid was made upon the *specifications* prepared by him and upon "alternate" plans prepared by such bridge company. No other person or company bid, or was given an opportunity to bid, upon the alternate plans which the bridge company prepared and submitted. The bridge company was awarded the contract on such plans on September 5, 1921. It is the contention of plaintiff that the contract made under the bid upon such alternate plans was illegal and void, because the contract was not let in pursuance of advertisement and bids on the original plans, as required by Section 10734, Revised Statutes 1919.

Defendants offered evidence, which was uncontradicted, that the plans offered by the bridge company were in all respects as good as, if not better than, the plans prepared by the Highway Engineer; that the bridge company complied fully with the specifications

and profiles prepared by the Highway Engineer; that the cost of the bridges under such alternate plans did not exceed the cost of the bridges under the plans prepared by the Highway Engineer; that such bridges were reasonably worth all the county agreed to pay for them.

There was some talk of an injunction suit about the first of December, 1921. However, the bridge company went ahead with the work. It appears that the vice-president of that company, C. B. Knowles, had heard of the threatened injunction suit and knew all about the filing of such suit. At the time the suit was filed against appellants, who are county officials, three of the bridges, to-wit, Wilkerson Creek, Morrow and Lightburn bridges, had been fully completed, accepted by the county court and warrants issued in payment therefor. At that time work had been started on the Irminger bridge, and material had been placed on the ground and orders given for other material for all three of the bridges not then completed. No temporary injunction was issued. At the time the bridge company was brought in as a defendant, all the bridges had been completed, accepted by the county court and warrants issued to the bridge company to the full amount of the contract and for extras, conditionally provided for in such contract. The unpaid warrants amount to $9,786.45.

The sole assignment of error made here is the action of the trial court in granting the injunction and in failing to dismiss plaintiff's bill. It is conceded that the bridge company did not submit its bid upon plans approved by the county court before the letting, and that the county court accepted the bid of the bridge company, upon alternate plans submitted by the bridge company, upon which no other contractor was given an opportunity to bid. It appears that the bids of the bridge company were within the estimate of cost made by the Highway Engineer and that such bridges were built upon such alternate plans, but otherwise in compliance with the specifications and profiles previously prepared by the Highway Engineer.

Section 10734 provides an exclusive method of letting contracts for the construction of bridges by the county court. It requires that all work let by contract, of the estimated cost of over five hundred dollars, shall be let, after due advertisement, upon bids made upon maps, plans, specifications and profiles, previously prepared by the Highway Engineer. That the statute does not contemplate the letting of contracts upon plans, other than those submitted by the Highway Engineer and approved in advance of advertising and acceptance of bids of contractor's bidding upon such plans, is clear. There accordingly can be no question that the acceptance of the bids made by the bridge company upon plans other than those prepared by the Highway Engineer was a failure to comply with the statute. Appellants do not dispute this.

Appellants have cited us to no statute authorizing the county court to pay for work of this character done under contract not awarded in compliance with statutory requirements. Article IV, Section 48, of our Constitution, provides:

"The General Assembly shall have no power, to grant, or to authorize any county or municipal authority to grant, . . . nor pay nor authorize the payment of any claim hereafter created against the State, or any county or municipality of the State, under any agreement or contract made without express authority of law; and all such unauthorized agreements or contracts shall be null and void."

Section 2164, Revised Statutes 1919, is as follows:

"No county, city, town, village, school township, school district or other municipal corporation shall make any contract, unless the same shall be within the scope of its powers or be expressly authorized by law, nor unless such contract be made upon a consideration wholly to be performed or executed subsequent to the making of the contract; and such contract, including the consideration, shall be in writing and dated when made,

and shall be subscribed by the parties thereto, or their agents authorized by law and duly appointed and authorized in writing.''

In an early case (Wolcott v. Lawrence County, 26 Mo. 272) this court laid down the general rule which is applicable here.

''The county court is only the agent of the county, and, like any other agent, must pursue its authority and act within the scope of its power. In respect to many things that concern the county, it has a large discretion; but in reference to the erection of county buildings its authority is defined by a public law, and is special and limited. It cannot act like general agents, whose acts may bind their principals if performed within the general scope of their agency, though in violation of private instructions unknown to those who deal with them; for it has no power over the subject except such as is given by law; and every person who deals with the county court, acting in behalf of the county, is bound to know the law that confers the authority. There is no difference in this respect between public and private agents; and if the county court exceeds its special and limited authority, conferred by the statute, in a material matter, the county will not be bound.''

A large number of cases in this and other states are cited by respondent to support the general proposition that in letting contracts for the construction of bridges, public buildings, etc., the county court or other public authorities must follow the express provisions of the statute or such contracts will be void, and the county, city or school district, as the case may be, will not be bound to pay for the work done under such contracts. It is only necessary to cite a few of the cases. [Anderson v. Ripley County, 181 Mo. 46; Heidelberg v. St. Francois County, 100 Mo. 69; Sparks v. Jasper County, 213 Mo. 218; Hannan v. Board of Education, 30 L. R. A. (N. S.) 214; Dolezal v. Bostick, 139 Pac. (Okla.) 964; Green v. Okanogan County, 111 Pac. (Wash.) 226.]

Such is the general rule. [9 Corpus Juris, 439; 15 Corpus Juris, 549.]

Appellants contend that neither the contract involved nor the performance thereof was *malum prohibitum;* that if the contract had been entered into in conformity with the statutes it would have been valid and binding on both parties; that as the bridges were constructed and the county accepted them and took possession of them under the contract and they were reasonably worth the contract price, it was the duty of the county to pay such warrants or, at least, the reasonable value of such bridges; that even if the contract had been *malum prohibitum,* payment of the warrants issued could not properly be enjoined without restoration to the contractor of the possession of the bridges; that the bridge company did the work in good faith; that in any event respondent is not entitled to injunction because of its laches.

One of the cases relied upon by appellants is Sparks v. Jasper County, supra. In that case the plaintiff sued for an unpaid balance alleged to be due upon several bridges. Recovery of the balance due on a certain bridge, the contract for which was let without complying with the statute, was denied. The county filed a counterclaim for $15,000 previously paid on other bridges, erected in years gone by, where the statute had not been complied with. WOODSON, J., said:

"The defendant sets up in its answer divers counterclaims and setoffs, aggregating about $15,000, for money paid by the county to plaintiff for bridges constructed by him in years gone by, under various contracts, which defendant alleges were illegally let to plaintiff.

"It is not alleged that the bridges were not constructed according to the terms of the contract, or that they were not worth the sums of money paid therefor; nor is it alleged that the county refused to receive the bridges, while, upon the other hand, the evidence shows

that the contracts for constructing these bridges had been fully preformed on both sides long prior to the institution of this suit. The record also discloses the fact that the contracts for their construction were fair and reasonable; that the bridges were substantially built and were reasonably worth the money paid by the county for them; and that they were accepted by the county and that they have been retained and constantly used by the public ever since, with no offer to return them to the plaintiff.

"Under those circumstances, conceding for argument's sake the contracts were illegal in their inception, yet it would be unjust and inequitable to permit the county to retain the bridges and at the same time recover back the money paid therefor. That principle of equity should apply here which requires persons who seek equity to do equity before their prayer will be heard.

"This is no novel question to the jurisprudence of this country. The law is that where there has been a complete performance of the contract on both sides and it is fair and reasonable in fact, there can be no recovery of the consideration by the municipal corporation where it retains and enjoys the benefits of the contract, and where it cannot or will not restore the property acquired by the contract, even though the contract be one which the law denounces as illegal and which could not be enforced on that account. . . .

"Here the plaintiff is not asking this court to enforce these alleged illegal contracts. They were years ago fully performed on both sides; and the defendant is now here by way of counterclaim, in the nature of a cross-bill, seeking to recover back the money she paid for those bridges without an offer to return them to the plaintiff. This she cannot do without she first returns or offers to return them to him; and the reason therefor is this: If the contracts were void, then the title to the bridges never passed thereby from plaintiff to the defendant and became her property; but they remained

his property the same as though the contracts had never been entered into. That being true, then when the county acquired the possession of the bridges under those void, yet colorable, contracts, she was morally bound to pay for them, as she did; and conceding, as before stated, without deciding it, that after accepting the bridges and paying for them, she had the right to repudiate the contracts and sue for, the recovery of the money paid by her for them, she would be morally bound, and from that springs the legal liability, to·return the bridges to plaintiff before she would be permitted to recover back the contract price so paid."

The Sparks Case, therefore, is not authority for the contention that the county court cannot be enjoined from paying for bridges not contracted for in compliance with the statute. In fact, that portion of the opinion which deals with such question directly is an authority quite to the contrary.

Seaman v. Levee District, 219 Mo. l. c. 29 to 36, is cited and relied upon by appellants. The case does not support appellants' contention. There the plaintiff was one of the commissioners of the levee district and the commissioners made a contract with him to do the engineering work. The suit was to recover upon unpaid warrants issued to plaintiff under such contract of employment  It was held that plaintiff could not recover, because the statute provided that no commissioner should be interested in any contract for the construction of any ditch, drain or levee in such drainage district. Recovery was denied, notwithstanding the fact that plaintiff had done the work and such work was reasonably worth the contract price and his work had been accepted by the commissioners as satisfactory and warrants had been issued in payment therefor. The case is an authority supporting respondent's contention.

In Roeder v. Robertson, 202 Mo. 522, it was held that a foreign corporation, doing business in this State without a license, could not recover the sale price agreed

upon in the contract. The contract was a nullity and no title to the property sold ever passed to the purchaser and the corporation could recover the property sold. The case affords no support for the contention that the bridge company cannot be enjoined from recovering from the county upon the warrants issued under a void contract.

Appellants cite cases from other states, some of which we will notice. Board of Agriculture v. Street Railway Company, 47 Ind. 407, involved the liability of a street railway company upon a subscription to the board in consideration of the location of the state fair at a place near Indianapolis where the railway company would reap benefit from carrying passengers to the fair grounds. The defense was that the street railway company had no corporate power to make the donation. It was held liable since the donation was in furtherance of its business as a common carrier and was not prohibited by its charter or by-laws from making such donation. The making of such donation was held to be within its implied corporate powers. Here the contract made by the county court was void, because it had no power whatever to enter into such contract except in compliance with express statutory provisions.

In Chapman v. County of Douglas, 107 U. S. 348, the agreement on the part of the county to pay for land for a poor farm, being unauthorized by law, so far as the time and method of payment was concerned, was held void. It was held that grantor nevertheless had the right to rescind the contract and to have the county declared a constructive trustee for him and to compel the county to reconvey the land to him or pay the reasonable price and value of such land. The case is not controlling authority in a case like this, where the action is a direct assault upon the payment under an illegal contract. That was a suit between the grantor and grantee, the county.

In Green v. Okanogan County, 111 Pac. (Wash.) 226,

it was held that the contract for the bridge was not legally let and therefore invalid. No injunction bond was given and the bill was dismissed by the trial court. The work was completed and paid for before the appeal was determined. It was held that the county could recover back the difference between the contract price and the reasonable value of the bridge. That, however, was a case where the county was seeking to recover back its money and the right of the county to recover the money did not grow out of compliance with the illegal contract, but out of a repudiation of such contract.

Appellants rely upon Section 9507, Revised Statutes 1919, which is as follows:

"If a claim against a county be for work and labor done, or material furnished in good faith by the claimant, under contract with the county authorities, or with any agent of the county lawfully authorized, the claimant, if he shall have fulfilled his contract, shall be entitled to recover the just value of such work, labor and material, though such authorities or agent may not, in making such contract, have pursued the form of proceedings prescribed by law."

Appellants cite Bryson v. Johnson County, 100 Mo. 76. This case immediately follows Heidelberg v. St. Francois County, supra, and was decided by the same judges at the same term of court. SHERWOOD, J., wrote the opinion in the Heidelberg Case, and BLACK, J., concurred. Judge BLACK wrote the Bryson Case and Judge SHERWOOD concurred therein. In the Heidelberg Case, Section 1218, Revised Statutes 1879 (Now Section 9507) was held to have no application because of the non-compliance by the parties with the statute in letting the contract. In the Bryson Case apparently the statute was complied with, but the bridge commissioner did not sign the contract thereafter executed. Notwithstanding such omission the county was held liable, as such omission was a mere failure to pursue the form of proceedings prescribed by law in executing a contract otherwise au-

thorized by law. Where the parties have not followed the prescribed procedure leading up to the making of the contract itself, the county court has no power to make such contract, and Section 9507 can have no application. Only by such reasoning can the two cases be regarded as in harmony. [See also Anderson v. Ripley County, supra.]

Appellant cites Section 2574, Revised Statutes 1919, which provides that the county court shall have power to audit and settle all demands against the county. This, of course, means lawful demands against the county. It cannot be construed as giving authority to the county court to audit and settle claims against the county court arising under void contracts.

We do not think the question of the right of the bridge company to recover the reasonable value of the bridges, or in lieu thereof to be restored to possession of the bridges, is involved in this case. Respondent is attacking the validity of the unpaid warrants because the contract under which they were issued is void. It has no control over the bridges and clearly its rights to challenge the legality of the warrants cannot be made to depend upon equities arising between the bridge company and the county when the county is repudiating the contract. As such taxpayer, respondent has the clear right to challenge the authority of the county court to pay out public money under a void contract.

Counties are permitted to be bound under the terms of contracts of this character only when such contracts are entered into in compliance with the express statutory provisions. Persons contracting with county courts must be held to know the law and to know that contracts not entered into in compliance with such statutory provisions are void. This rule is well expressed in Zottman v. San Francisco, 81 Am. Dec. (Cal.) 96, where the court said at page 103:

"It may sometimes seem a hardship upon a contractor that all compensation for work done, etc., should

be denied him; but it should be remembered that he, no less than the officers of the corporation, when he deals in a matter expressly provided for in the charter, is bound to see to it that the charter is complied with. If he neglect this, or choose to take the hazard, he is a mere volunteer, and suffers only what he ought to have anticipated. If the statute forbids the contract which he has made, he knows it, or ought to know it, before he places his money or services at hazard.

"The analogy drawn from the obligation of an individual to pay for work which he accepts, although there has been no previous contract for its performance, wholly fails to reach the present case. Here, neither the officers of the corporation nor the corporation by any of the agencies through which they act, have any power to create the obligation to pay for the work, except in the mode which is expressly prescribed in the charter; and the law never implies an obligation to do that which it forbids the party to agree to do." [See, also, Reams v. Cooley, 171 Cal. 150; State v. Pullman, 23 Wash. 583.]

To permit recovery *under such contract* for the reasonable value of the work done thereunder by denying injunction sought by a taxpaying citizen, would be to permit the county to do indirectly that which it is forbidden to do directly and would furnish a ready means of evading the law. Such course of action may not be sanctioned.

It is contended that plaintiff was guilty of laches in bringing this action and cannot now invoke the aid of a court of equity to enjoin the payment of the warrants; that he who seeks equity must do equity. There is no evidence in the record showing when plaintiff acquired knowledge of the fact that the bridge company was awarded the contract on alternate plans, upon which others were not permitted to bid after proper advertisement. The bridge company had full knowledge of the pendency of the suit from the time it was filed and knew that the validity of its contract was questioned and

suit threatened, at least five or six weeks earlier. Notwithstanding such knowledge, it went ahead and completed the bridges. It is the warrants issued in payment of such bridges then only begun, which are here involved. In such case it comes with poor grace from the bridge ·company to say that plaintiff is barred by its laches. The bridge company was not misled in any way by the conduct of plaintiff.

.If one whose property is about to be subjected to a lien for a public improvement, such as the building of a sewer or paving of a street, and where payment can only be secured by tax bills, is not estopped to assert the invalidity of the proceedings, under which such improvement is being made, where he stands by and sees the work progressing, respondent is not estopped under the facts in this case. [See Cox v. Mignery & Co., 126 Mo. App. 669; Verdin v. St. Louis, 131 Mo. 26, 1. c. 98; Perkinson v. Hoolan, 182 'Mo. 189.]

For the reasons set forth, the judgment of the trial court is affirmed. *Graves, James T. Blair* and *Walker, JJ.,* concur; *Woodson, C. J.,* dissents; *White* and *Ragland, JJ.,* absent.