IN RE NATHAN FRANK, 9 S. W. (2d) 153.

Court en Banc, September 6, 1928.

PER CURIAM.—This is an original proceeding in mandamus. The writ will have to be denied. It is not our practice to prepare formal opinions in cases in which alternative or provisional writs are denied in the first instance, but owing to the public interest involved we deem it proper to state briefly the reasons for our action in this instance.

Petitioner seeks our writ of mandamus to compel Charles U. Becker, Secretary of State of the State of Missouri, to publish a certified statement of the result of the last primary election as to candidates for the office of United States Senator, disregarding in his final tabulation the returns from the counties of Jackson, Buchanan and Pemiscot relating to candidates for the Republican nomination for United States Senator, which are alleged to be so arbitrary and false as to be a nullity, and to mail to the chairman of the Republican State Central Committee a certificate in accordance therewith, and "to certify to the county clerk of each county in the State of Missouri, the petitioner, Nathan Frank, as the nominee for United States Senator on the Republican ticket." Petitioner also prays "that in the meantime the said Secretary of State be enjoined from publishing a certified statement showing the name of any other candidate as having received the greatest number of votes cast at said primary election, and that he be further enjoined from mailing to the chairman of the Republican State Central Committee a certificate showing the name of any nominee other than petitioner, and that he be further enjoined from certifying to the county clerk of each county in the State of Missouri, the name of any other person than petitioner

as the nominee of United States Senator on the Republican ticket to be voted on at the November, 1928, election, and for such further orders and relief in the premises as to the court may seem meet and proper." The Secretary of State has entered his voluntary appearance, waived notice, issuance and service of the alternative writ and consented that the petition may be taken as and for the writ.

Election contests in this State are purely statutory. [State ex rel. v. Hough, 193 Mo. 615, l. c. 643.] Petitioner avers that no statutory method has been provided for contesting a primary election, and that, therefore, he may resort to a proceeding in mandamus originally filed in this court and by this strictly legal remedy compel the Secretary of State to certify his own name as the Republican nominee for United States Senator instead of the name of another, whose name petitioner says will be so certified from the face of the returns made to the Secretary of State unless we grant the writ of mandamus herein prayed. The duties of the Secretary of State in connection with returns certified to him in state primary elections are thus indicated in Revised Statutes 1919:

"Sec. 4846. As soon as the state canvass of a primary shall be certified to him, the Secretary of State shall cause to be published a certified statement of the result of such primary as to candidates for state officers, and representatives in Congress, and any other candidate whose district extends beyond the limits of a single county, and shall mail to the chairman of the state central committee of each party so much of such certificate as relates to his party.

"Sec. 4847. Not less than twenty days before any November election, the Secretary of State shall certify to the county clerk of each county within which any of the electors may vote for the candidates for such offices, the name and description of each person nominated for any such office as specified in the nomination papers."

Under the foregoing statutes the duty of the Secretary of State is plain. He must publish the result of the primary election as it appears from the state canvass certified to him, and not otherwise. It thus appears that we are asked to command him to proceed in a manner contrary to the plain terms of the above statute, and do what under the law he has no power to do, namely, reject or go behind the results of the canvass of the returns of the precinct judges and clerks certified to him by the county clerks of the various counties in the State. In such case mandamus does not lie. [18 R. C. L. 268.]

Does the allegation that some of the returns so certified to the Secretary of State are false and fraudulent change the situation and make this remedy available? While petitioner's pleading is to the effect that the results certified by the county clerks of the three counties named, insofar as they relate to the nomination of the Re-

publican candidate for United States Senator, are false in fact, fraudulent and a nullity and hence should be disregarded, yet he does not further plead that such facts are apparent on the face of the certificates, or that they have been legally so determined, or that the Secretary of State has any power to determine them to be as alleged. Until it is legally determined whether or not these certificates are false and fraudulent it seems clear, even on petitioner's own theory of the case, that the Secretary of State cannot be guilty of refusing to discharge any ministerial duty the performance of which is necessary to protect an alleged right of petitioner. On the face of the record presented the charge that such certificates are fraudulent stands neither admitted nor proved. Mandamus is a legal and not an equitable remedy. [38 C. J. 543; 18 R. C. L. 88.] Its office is to execute, not to adjudicate, and it cannot ascertain or adjust mutual claims or rights between the parties. [Ferris on Extraordinary Legal Remedies, sec. 194; State ex rel. Lyons v. Bank of Conception, 174 Mo. App. 589, l. c. 593.] If the right be doubtful, it must be first established in some other form of action; mandamus will not lie to establish as well as enforce a claim of uncertain merit. [Bowser & Co. v. State ex rel. Hines, 137 N. E. (Ind.) 57.] It, therefore, follows that no duty is presently imposed by law on the Secretary of State to do the things we are here asked to command him to do, and in such case our writ of mandamus should not issue. [State ex inf. v. Kansas City Gas Co., 254 Mo. 515, l. c. 532.]

No statutory method being provided for contesting primary elections in this State, it is obviously petitioner's hope, though not specifically pleaded, that this court will in this mandamus proceeding hear and determine his charges of fraud and finally dispose of his alleged objections to the state canvass of the primary election, which present an issue clearly in the nature of an election contest, and thus in effect determine his election contest. The principles governing the issuance of mandamus, which we have already discussed and which are plainly applicable, indicate that our writ should not issue in this case. Doubtless conscious of the sound applicability of these principles counsel for petitioner in their supporting suggestions say that "this proceeding is based upon Article VIII, Section 3, of the constitutional amendments, adopted February 26, 1924, appearing in Laws 1925, page 410, the applicable provisions of which are as follows: 'Provided, that in cases of contested elections, grand jury investigations and in the trial of all civil or criminal cases in which the violation of any law relating to elections, including nominating elections, is under investigation or at issue, such officers may be required to testify and the ballots cast may be opened, examined, counted, compared with the list of voters and received as evidence.' "

They further argue that this "section by implication confers upon this court jurisdiction to determine the validity of the certified votes in dispute, and the duty of the Secretary of State in reference thereto." We do not so construe the amendment. A brief survey of the decisions of this court prior to the proposal of this constitutional amendment will show much contrariety and instability of opinion touching the right to examine ballots and call election officials as witnesses in proceedings to uncover election frauds. This amendment was evidently proposed by the Constitutional Convention of 1922 and adopted by the people for the sole purpose of putting this vexed question at rest by making such evidence available in the circumstances specified. But it neither creates new remedies nor affects the jurisdiction of courts or the scope of existing remedies. This court has power to issue original writs of mandamus only by virtue of Section 3 of Article VI of the Constitution. The nature and limitations of such writs have already been sufficiently discussed and the adoption of the above constitutional amendment has in no wise served to change them. From the fact that this amendment in no uncertain terms assures the power to open, examine, count and compare the ballots cast with the list of voters and receive the same as evidence and require election officials to testify "in case of contested election, grand jury investigations and in the trial of all civil or criminal cases in which the violation of any law relating to elections, including nominating elections, is under investigation or at issue," it does not follow that the nature and scope of a proceeding in mandamus is extended to the investigation or trial of such violations, or that jurisdiction is thereby conferred on this court to investigate or try them in this proceeding.

In Missouri nominating elections are of statutory and not constitutional creation. We are aware of no provision in our Constitution which could give rise to the implication for which petitioner here contends with reference to primary or nominating elections. Whenever the General Assembly in its wisdom determines that the way should be provided to contest primary elections it will doubtless make the provision, but courts are without power to supply such legislative omission.

But though our laws make no provision for contesting the announced result of a primary election, it does not follow that frauds committed in such an election may not be unearthed and the perpetrators punished. Violations of primary election laws, committed with fraudulent intent, are crimes, and the courts of this State having criminal jurisdiction may call to their aid grand juries and may require election officers to testify and the ballots cast to be opened,

examined, counted and compared with the list of voters and received as evidence. The means for punishing primary election "crooks" are ample.

For the reasons above stated the writ applied for is denied and the proceedings dismissed. All concur, except *Walker, J.,* absent.