STATE ex rel. Charles **WALTON,**
**Respondent,**

v.

*Reuben* **MILLER, Judge, Appellant.**

No. 22566.

Kansas City Court of Appeals. Missouri.

Jan. 7, 1956.

Robison & Miller, John J. Robison, Maysville, for appellant.

Raymond O. Sears, Savannah, for respondent.

DEW, Presiding Judge.

A writ of mandamus was sought in this action by the respondent herein to compel the appellant, presiding judge of the County Court of Andrew County, Missouri, to sign a warrant that had been drawn payable to respondent by the county clerk of that county. The alternative writ was issued, the matter heard on the pleadings, the case then taken under advisement, a judgment rendered in favor of the respondent herein and the writ made permanent. Appellant then filed this appeal.

For clarification, since the relator in the trial court is the respondent on this appeal, and the respondent in the trial court is the

appellant here, we shall refer to the relator in the trial court as Walton, and to the respondent in the trial court and appellant here, as Miller.

Walton's petition for the writ alleged that Miller was presiding judge of the county court of Andrew County, Missouri; that Walton was in the business of grading and moving dirt; that at the direction of the county court Walton performed certain earth-moving and construction work in Andrew County and under agreement with it that he would be paid $500 for the work. He alleged that on August 24, 1955, upon completion of the work, he presented his bill therefor to the county court for $500, which was approved therein by Judge Taylor and Judge Salmons, whereupon an order was made directing the clerk of the court to draw a warrant for the same, for which there were funds on hand for payment. It was further alleged that Miller failed and refused to sign the warrant when drawn and still fails and refuses to do so. It was alleged that Walton had done everything required by law to entitle him to have the warrant signed and he had no adequate remedy at law.

The alternative writ was issued requiring Miller to sign the warrant or show cause for his refusal to do so. Miller's return, in substance, denied that Walton had done the work described, and alleged that Miller was not required to sign the warrant because it was illegal for the reason that if any agreement was made by the other two judges, it was at a time when the court was not in session, either at a Regular Term, Special Term or Adjourned Term; that if made at all it was an agreement on the part of the two other judges acting in their individual capacities and not during any session of the court or in the courtroom where such business is conducted; that the official records of the court show that on August 18, 1955, the date of the purported agreement, the court was not in session, and that the next day of the Adjourned Term of the court was August 19, 1955; that since the beginning of Miller's

term of office the other two judges named have conspired to meet secretly without the knowledge of Miller and without notifying him of the meetings; that they have entered into alleged contracts without an Adjourned Session of the court as required by law; that if the agreement in question was made by them with Walton, it was without Miller's knowledge or consent and without being in any session of the court of which Miller had notice; that his first knowledge of any such agreement was when Walton presented his bill, all of which is contrary to the requirements of law. The return further averred that the purported agreement was fraudulent; that Walton and the two other judges named knew that the county was equipped to do the work proposed and at a cost of at least one-half under the contract price; that the minutes of the alleged agreement were made after the usual and ordinary business hours of the court; that it was not made in writing or signed by any person authorized to make contracts for the county.

Walton's reply was in the nature of a general denial as to all of the new matter alleged in the return except that he admitted that the agreement was not in writing.

Section 432.070, RSMo 1949, V.A.M.S. provides:

"No county * * * shall make any contract, unless the same shall be * * * in writing and dated when made, and shall be subscribed by the parties thereto, or their agents authorized by law and duly appointed and authorized in writing".

Miller contends, in addition to his lack of knowledge or notice of the contract, and other irregularities of the transaction, that the contract in question was illegal and void because not in writing as required by the foregoing statute. Walton maintains that the agreement was made by a majority of the county judges who constitute a quorum, Section 49.070; that he, having performed the services in good faith, is en-

titled to recover for his work even though the contract may not have pursued the form prescribed by law and was not in writing. He relies on Section 431.100.

Section 431.100 reads as follows:

"If a claim against a county be for work and labor done, or material furnished in good faith by the claimant, under contract with the county authorities, or with any agent of the county lawfully authorized, the claimant, if he shall have fulfilled his contract, shall be entitled to recover the just value of such work, labor and material, though such authorities or agent may not, in making such contract, have pursued the form of proceedings prescribed by law".

The undisputed facts appear to be that Walton was in the courthouse on August 15, 1955; that all three county judges were in the hallway, Miller talking to some person there, and the two remaining judges in another group conversing, when Walton approached and addressed the latter group and out of the hearing and without the knowledge of Miller, the presiding judge of the court. Judges Taylor and Salmons then instructed Walton to proceed with the grading and fixed his compensation at $500. The contract was not in writing and no entry of it was made on the court's records until August 18, 1955, a day on which no session of the court had been called and of which entry Miller had no notice, nor any knowledge of the claim until the warrant was presented to him for his signature, as presiding judge. The claim purported to have been audited and approved by the other judges.

■■ How do the foregoing facts conform to the requirements prescribed by the law to safeguard the funds of the county? In the first place the law requires such contracts to be in writing. Section 432.070. Absent the required writing, such contracts "have been held void and performance by the other party ineffectual

to create legal liability on the political subdivision on the theory of ratification, estoppel or implied contract [citations]." Elkins-Swyers Office Equipment Co. v. Moniteau County, 357 Mo. 448, 456, 209 S.W.2d 127, 131. See, also, Carter v. George, 216 Mo.App. 308, 264 S.W. 463; Cook v. St. Francois County, 349 Mo. 484, 162 S.W.2d 252, 254; Missouri-Kansas Chemical Co. v. Christian County, 352 Mo. 1087, 180 S.W.2d 735, 736. One dealing with the county is deemed to know of such restrictions imposed by law on such transactions. Riley v. City of Rock Port, Mo. App., 165 S.W.2d 880; Hillside Securities Co. v. Minter, 300 Mo. 380, 254 S.W. 188, 193.

■ It was represented to Miller that the county court of which he was presiding judge had approved and audited the Walton claim and it is contended that his duty to sign the warrant therefore was purely ministerial. State ex rel. Davis v. Newton, Mo.App., 172 S.W.2d 872. A majority of the county judges constitute a quorum, Section 49.070, provided that it is made at the proper time and place to transact the business. It is the duty of the county court to audit all claims against the county. Section 49.270. However, "This, of course, means lawful demands against the county. It cannot be construed as giving authority to the county court to audit and settle claims against the county court arising under void contracts". Hillside Securities Co. v. Minter, supra, 254 S.W. at page 193.

■ When the two judges, Taylor and Salmons, while conversing in the corridors of the courthouse and without the presence, knowledge or consent of Miller, the presiding judge, and who, seemingly, was standing within easy call, undertook to make an oral agreement with Walton to do work for the county, they were acting in their individual capacity and they were not, under such circumstances, the authorized agents of the county respecting the transaction. "A county court performs

its functions as a constituted body. Its three members acting individually have no power to obligate the county". Missouri-Kansas Chemical Co. v. Christian County, 180 S.W.2d at page 736. The same opinion states at same page: "A county court is a court of record and speaks only through its records; verbal understandings with county judges are not valid. Boatright v. Saline County, 350 Mo. 945, 169 S.W.2d 371; Carter-Waters Corporation v. Buchanan County, Mo.Sup., 129 S.W.2d 914 and cases cited". On a similar matter in Carter v. Reynolds County, 315 Mo. 1233, 288 S.W. 48, 50, the Supreme Court said: "He was not an agent of the county 'duly appointed and authorized in writing'; being merely a member of the county court did not constitute him an 'agent authorized by law' to make contracts for the county. If all three of the judges of the county court had separately agreed with plaintiff that the county would pay him $500 for driving piling in Black river, the county would not be bound. They could act for and obligate the county only when sitting as the county court. [citations]".

As to Walton's right to recover under Section 431.100, assuming he performed the work in good faith, it has been held that that section applies only to proceedings "where the parties have not followed the required form of procedure in executing a contract" with the county and "affords no relief where the parties have failed to follow the conditions imposed upon the making of a contract". Missouri-Kansas Chemical Co. v. Christian County, supra. At page 737 of 180 S.W.2d, the court further said: "We have held that this section does not give the claimant a right to recover where he has performed under a contract with a county official if such official is not authorized by law to make the contract".

Under the facts shown of record, was it Miller's plain duty to sign Walton's warrant as a purely administrative act? If not, the writ of mandamus is not avail-able to compel him to do so. Mandamus is a legal, not an equitable remedy. Its function is not to adjudicate, adjust or ascertain the mutual rights between the parties. Its office is to execute or enforce a clear and plain duty. If the right is doubtful, it must first be established before mandamus will issue. In re Frank, 320 Mo. 1087, 1091, 9 S.W.2d 153. "Much less will the writ be awarded to coerce the performance of acts which are forbidden by statute or law, or are contrary to public policy, or tend to aid in an unlawful purpose or transaction". 34 Amer.Jur. p. 866, Section 76. "Where no other adequate remedy is provided by law, mandamus lies to compel the proper officers or boards to perform their ministerial duties in signing or issuing warrants or orders for salaries or claims for official services or to pay therefor where the right which the writ is asked to enforce is clear and the act is purely ministerial; but the writ will not be issued where the right to the requested relief is not clear or where the requested act is not purely ministerial, since mandamus is not a proper remedy for an adjudication of the question of salary. * * *". 55 C.J.S., Mandamus, § 207, p. 403. At page 406, the same authority states that: "Mandamus will not lie, however, to compel the issuance of a warrant for payment of salary after an appropriation has lapsed or where the issue of such warrant has not been authorized as provided by statute; nor will the writ lie to compel payment of salary or fees alleged to be due where payment thereof would be in violation of law, * * *".

It is our conclusion that the evidence does not establish a plain ministerial duty on the part of Miller, as presiding judge of the county court of Andrew County, Missouri, to sign the Walton warrant, and we conclude that under the record the evidence was not sufficient to authorize a writ of mandamus to compel him to do so. The judgment is reversed.

All concur.