**AJM PACKAGING CORPORATION, Respondent,**

v.

**CROSSLAND CONSTRUCTION COMPANY, INC., Appellant.**

No. 21480.

Missouri Court of Appeals, Southern District, Division One.

Feb. 17, 1998.

Harold W. Mitts, Jr., Kansas City, Svoboda & Mitts, P.C., Stephen J. Dennis, Overland Park, Kansas, Daniel Whitworth, Myers, Taylor & Whitworth, Joplin, for appellant.

Bruce A. Copeland, Copeland & Scott, Joplin, Stuart Teger, Honigman, Miller, Schwartz & Cohn, Detroit, MI, for respondent.

CROW, Judge.

This dispute arises from a contract in which Crossland Construction Company, Inc. (designated "Contractor" in the contract) agreed to perform work for AJM Packaging Corporation (designated "Owner" in contract). This opinion henceforth refers to the parties by their respective designations in the contract.

Owner sued Contractor, averring Contractor breached the contract and breached a warranty that the work "would be of good quality and free of faults and defects."

Contractor moved the trial court to order Owner "to arbitrate the pending claims." The trial court denied Contractor's motion.

Contractor appeals.[1] Contractor's sole point relied on is:

> (1) An order denying an application to compel arbitration made under section 435.355...."

1. Section 435.440, RSMo 1994, reads, in pertinent part:
   "1. An appeal may be taken from:

"The trial court erred in refusing to submit this case to arbitration because [Contractor] has an absolute right to arbitrate this dispute in that the contract provides for arbitration of all 'disputes' between the parties and under the Federal Arbitration Act and/or Missouri Uniform Arbitration Act the trial court had no authority to refuse to compel arbitration."

Owner presents three reasons which, according to Owner, demonstrate the trial court did not err in denying Contractor's motion to compel arbitration. One of Owner's reasons is that Contractor "failed to establish an agreement to arbitrate."

The parties agree that one component of the contract is an eight-page document denominated: "AIA Document A101, Standard Form of Agreement Between Owner and Contractor ... 1987 Edition." This opinion henceforth refers to that document as "the Base Contract."

At the outset, the Base Contract states: "The 1987 Edition of AIA Document A201, General Conditions of the Contract for Construction, is adopted in this document by reference."

On page 6 of the Base Contract is a segment headed: "Article 9, Enumeration of Contract Documents." That segment reads, in pertinent part:

"9.1 The Contract Documents, except for Modifications issued after execution of this Agreement, are enumerated as follows:

9.1.1 The Agreement is this executed Standard Form of Agreement Between Owner and Contractor, AIA Document A101, 1987 Edition.

9.1.2 The General Conditions are the General Conditions of the Contract for Construction, AIA Document 201, 1987 Edition.

9.1.3 The Supplementary and other Conditions of the Contract are those contained in the Project Manual dated 12–18–93, and are as follows: ... Specifications referenced in paragraph 9.1.4 below[.]

9.1.4 The Specifications are those contained in the Project Manual dated as in Subparagraph 9.1.3, and are as follows: ... Project specifications for A.J.M. Packaging Corporation [Pages] 00100–1—16700–1

. . . ."

Paragraph 9.1.2, quoted above, is consistent with the proviso at the outset of the Base Contract (quoted earlier) in that both refer to the 1987 Edition of AIA Document A201, the "General Conditions of the Contract for Construction." This opinion henceforth refers to the latter document as "Document A201 (1987)."

Section 435.355 reads:

"1. On application of a party showing an agreement described in section 435.350,[ 2] and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration, but if the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue so raised and shall order arbitration if found for the moving party; otherwise, the application shall be denied...."

The application to compel arbitration filed by Contractor in the trial court was accompanied by written suggestions. Attached to the suggestions was a copy of the Base Contract. Also attached to the suggestions was a page referred to in the suggestions as "Exhibit B." [3] According to the suggestions, Exhibit B was "the pertinent section" of Document A201 (1987). Exhibit B contained a para-

---

References to statutes in this opinion are to RSMo 1994.

2. Subject to certain exceptions, none of which applies in the instant case, § 435.350 provides: "A written agreement to submit any existing controversy to arbitration or a provision in a written contract ... to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable, save upon

such grounds as exist at law or in equity for the revocation of any contract...."

3. In the record furnished us, the page itself is not marked Exhibit B (or otherwise). However, in reading the page in conjunction with the suggestions, this court infers Contractor meant the page to be the "Exhibit B" referred to in the suggestions. Accordingly, this opinion refers to the page as Exhibit B.

graph numbered 4.5.1. A portion of that paragraph is footnoted below.[4]

In a written response in opposition to Contractor's application to compel arbitration, Owner averred that the "actual contract between the parties prohibits arbitration as the means of resolving disputes and instead requires that all disputes 'be settled in court by the Courts of the State of Missouri.' "

The trial court held a hearing, evidently pursuant to § 435.355.1 (quoted earlier). At the hearing, Owner offered the Base Contract and 23 other exhibits—all of which were documents—"for the record for purposes of the motion regarding the compelling arbitration[.]"

Owner also had two affidavits of Contractor's president marked as exhibits. One affidavit was dated August 8, 1996; it was marked Exhibit 9. The other affidavit was dated November 21, 1996; it was marked Exhibit 13.

Regarding the affidavits, Owner's lawyer said:

"And # 9 and # 13 are simply Mr. Crossland's two affidavits which I assume if we can stipulate that the [Owner] has presented those for evidence at this purpose I'd be happy to let them be used. I have them here if you want. . . . If the [Contractor] would like they can use these marked Exhibits, # 9 and # 13, if they like."

One of Contractor's lawyers said:

"Your Honor, I just want to clarify for the record that there is nothing before the Court to say that the plans and specs as a whole, as we look at all these Exhibits here today or otherwise, were given to [Contractor] as a unit. There's just absolutely no testimony to that effect. So with that objection."

Another of Contractor's lawyers said:

"I think I know what [Owner's lawyer] is doing, which is again trying to establish a record from whatever occurs from here on. We have already prior filed the originals of the affidavits, both the affidavits. . . . We don't have any objection to them being offered as an Exhibit either if that's felt necessary for the purpose of establishing the record. They are contained in the file."

The trial court announced:

"[T]he affidavits are in the file, so I'll have them to read if that's a problem."

Regarding the exhibits offered by Owner, the trial court announced:

"I'll admit these for the limited purpose of review by the Court for the purpose of ruling whether this ought to be tried or arbitrated."

No one testified at the hearing and, as best this court can determine from the record, no other exhibit was offered.

Owner's contention that Contractor "failed to establish an agreement to arbitrate" is based on Owner's failure to present Document A201 (1987) to the trial court at the hearing.

As we have seen, at least two provisions of the Base Contract incorporate Document A201 (1987) into the contract between the parties. The first provision is at the outset of the Base Contract; the second provision is paragraph 9.1.2 of the Base Contract. Both provisions are quoted earlier in this opinion. This opinion henceforth refers to those provisions as "the incorporation provisions."

This court holds Document A201 (1987)—whatever it may say—was incorporated into the parties' contract by the incorporation provisions.[5] However, that does not mean Document A201 (1987) compels arbitration. Whether Document A201 (1987) compels ar-

---

4. "4.5.1 Controversies and Claims Subject to Arbitration. Any controversy or Claim arising out of or related to the Contract, or the breach thereof, shall be settled by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrator or arbitrators may be entered in any court having jurisdiction thereof. . . ."

5. There is authority for the proposition that where a signed contract explicitly incorporates a separate document, the parties signing the contract are bound by the incorporated document even though they have not seen it. *Norman Security Systems, Inc. v. Monitor Dynamics, Inc.,* 740 F.Supp. 1364, 1368[3] n. 3 (N.D.Ill.1990).

bitration hinges on whether paragraph 4.5.1 (quoted in footnote 4, *supra* ) is part of Document A201 (1987). To facilitate discussion of that issue, this opinion henceforth refers to paragraph 4.5.1 as "the alleged arbitration provision."

■ The only indication in the record that the alleged arbitration provision appears in Document A201 (1987) is the averment in the suggestions filed by Contractor in the trial court, to which Exhibit B (referred to earlier) was attached. As previously recounted, Contractor's suggestions alleged Exhibit B was "the pertinent section" of Document A201 (1987). However, pleadings are not self-proving. *Brawley & Flowers, Inc. v. Gunter*, 934 S.W.2d 557, 561[5] (Mo.App. S.D. 1996). Accordingly, even if Contractor's suggestions constituted a pleading—we do not imply they did—no averment therein proved itself. Therefore, Contractor's suggestions did not establish that Exhibit B was "the pertinent section" of Document A201 (1987).

Owner asserts, and Contractor tacitly concedes, that neither Exhibit B nor any document identical to it was presented to the trial court at the hearing. Nonetheless, Contractor proclaims:

> "[I]t was not necessary to introduce 'evidence' of the arbitration provision at the hearing. It was already 'in the record,' as acknowledged by the trial court during the hearing."

In support of that hypothesis, Contractor refers this court to a comment by the trial court at the end of the hearing. There, the trial court acknowledged that all "briefs" and "documents" were "part of the file" and the court was "going to review the file." Consequently, says Contractor, "It was unnecessary to introduce additional 'evidence' of an agreement to arbitrate at the hearing."

Contractor cites no authority for its premise that merely because Exhibit B appeared in the "file," the trial court was compelled to believe that Exhibit B was "the pertinent section" of Document A201 (1987), i.e., a section of Document A201 (1987) containing the alleged arbitration provision.

■ The authenticity of Exhibit B was not established by any of the usual methods: pleadings, interrogatories, requests for admissions, or testimony. Contractor could have easily used any one of those methods to establish that Exhibit B was what Contractor's suggestions—signed by its lawyers—said it was. However, as this court explained in *Re Redemption Proceeding by Hokanson*, 706 S.W.2d 559, 560[1] (Mo.App. S.D.1986), an appellate court cannot accept counsels' statements as a substitute for record proof, even though the court has no reason to doubt counsels' accuracy.

The only other possible proof that Exhibit B was "the pertinent section" of Document A201 (1987)—"the pertinent section" being the alleged arbitration provision—was the two affidavits of Contractor's president (Exhibits 9 and 13). The transcript of the hearing does not indicate either affidavit was received in evidence. However, inasmuch as the trial court announced that the affidavits were "in the file" and the court could read them "if that's a problem," it appears to this court that the trial court treated the affidavits as part of the record upon which the trial court was to adjudicate Contractor's application to compel arbitration. As this court comprehends Owner's brief, Owner treats the affidavits that way. Accordingly, this court has studied the affidavits to determine whether either establishes that the alleged arbitration provision in Exhibit B was part of Document A201 (1987).

Exhibit 9—the first affidavit—states that the affiant is "very familiar" with the requirements of Document A201 (1987) "including the arbitration provision." However, the affidavit does not mention Exhibit B or furnish any indication that Exhibit B is a copy of any arbitration provision in Document A201 (1987). Exhibit 13—the second affidavit—does not mention Document A201 (1987) or Exhibit B.

■ This court therefore holds Contractor failed to establish that the alleged arbitration provision in Exhibit B appears in Document A201 (1987).[6]

6. This court does not overlook the two bottom lines of Exhibit B which identify the exhibit as a

■ This court recognizes the existence of a public policy of actively enforcing private arbitration agreements under both the Federal Arbitration Act and Missouri's Uniform Arbitration Act. *Greenwood v. Sherfield*, 895 S.W.2d 169, 173[12] (Mo.App. S.D.1995). However, a party who has not agreed to arbitrate a dispute cannot be forced to do so. *International Brotherhood of Electrical Workers, Local No. 4, AFL–CIO v. KTVI–TV, Inc.*, 985 F.2d 415, 416[2] (8th Cir.1993). A party can be compelled to arbitrate a dispute only when it has agreed to arbitrate. *Greenwood*, 895 S.W.2d at 174, citing *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 648, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648, 655 (1986).

As Contractor failed to establish that the alleged arbitration provision appears in Document A201 (1987), this court holds the trial court did not err in denying Contractor's application to compel arbitration.

However, even had Exhibit B been sufficient to establish that Document A201 (1987) contains the alleged arbitration provision, there is a second reason that the trial court did not err in refusing to compel Owner to arbitrate the dispute with Contractor. That reason is found in paragraphs 9.1.3 and 9.1.4 of the Base Contract (quoted earlier). Those paragraphs, read in conjunction with paragraph 9.1 of the Base Contract (also quoted earlier), clearly spell out that the "Contract Documents" include the "Project Manual dated 12–18–93" consisting of "Project specifications ... [Pages] 00100–1[to] 16700–1."

Among the exhibits presented at the hearing by Owner and received by the trial court was Exhibit 6, identified as the "specifications that are specifically incorporated in the contract" by paragraphs 9.1.3 and 9.1.4 of the Base Contract. This opinion henceforth refers to Exhibit 6 as "the Specifications."

Owner directs us to two provisions of the Specifications. The first is designated "Section 00810" and reads:

"The following modify, change, delete from or add to the 'General Conditions of the Contract for Construction', AIA Document A201, Thirteenth Edition, August 1976 as if bound hereinbefore and amended. Where any Article of the General Conditions is modified or any Paragraph, Subparagraph or Clause thereof is modified or deleted by these Supplementary Conditions, the unaltered provisions of that Article, Paragraph, Subparagraph or Clause shall remain in effect."

An alert reader will recall that the incorporation provisions of the Base Contract incorporated Document A201 (1987) into the contract. Section 00810 of the Specifications (quoted above) refers to "AIA Document A201, Thirteenth Edition, August 1976." As Contractor emphatically points out, nothing in the Base Contract incorporates a 1976 version of AIA Document A201 into the parties' contract. Consequently, it is evident that section 00810 of the Specifications purports to override certain provisions of a version of AIA Document A201 which was not incorporated into the contract by any provision in the Base Contract. The effect of this anomaly is addressed *infra*.

The second provision of the Specifications to which Owner directs us appears in a segment of the Specifications designated "Article 7, Miscellaneous Provisions." The provision reads:

"7.9.1 Reference to settlement of arbitration in accordance with Construction Industry Arbitration Rules of the American Arbitration Association shall be deleted. All claims or disputes and other contract matters will be settled in court by the courts of the State of Missouri."

Paragraph 7.9.1 of the Specifications was evidently the basis for Owner's contention in the trial court (noted earlier in this opinion) that the contract between the parties requires that all disputes "be settled in court

page of "AIA Document A201 ... 1987." This court is unaware of any authority—and Contractor cites none—which holds a bare recital on a document authenticates the document by establishing that the document is what it purports to be. Indeed, this court held otherwise in *Collins v. West Plains Memorial Hospital*, 735 S.W.2d 404, 406–07[4] (Mo.App. S.D.1987), where this court explained: "The authenticity of a document cannot be assumed, what it purports to be must be established by proof."

by the Courts of the State of Missouri." Owner repeats that contention in this court.

Had the incorporation provisions in the Base Contract incorporated a 1976 version of AIA Document A201 into the parties' contract, section 00810 and paragraph 7.9.1 of the Specifications would have unquestionably overridden any arbitration provision in the AIA Document A201. However, the Base Contract incorporated Document A201 (1987), not a 1976 version. Furthermore, a close reading of section 00810 of the Specifications reveals it does not purport to incorporate a 1976 version of AIA Document A201 into the parties' contract. Section 00810 merely purports to override those provisions of a 1976 version of AIA Document A201 which are specifically modified, changed, deleted from or added to by provisions in the Specifications.

Thus, the issue arising from section 00810 and paragraph 7.9.1 of the Specifications is whether the reference to a 1976 version of AIA Document A201 in section 00810 nullifies paragraph 7.9.1 (which purports to delete any reference to settlement by arbitration and require all disputes to be settled in the courts of Missouri).

█ It is the primary rule of construction of contracts that a contact must be construed as a whole, giving effect to every part, if it is fairly and reasonably possible to do so, and to thus determine the true intention of the parties. *Thomas v. Utilities Building Corp.*, 335 Mo. 900, 74 S.W.2d 578, 580–81[1] (1934). Each term of a contract is construed to avoid a result which renders other terms meaningless; a construction which attributes a reasonable meaning to all the provisions of the agreement is preferred to one which leaves some of them without function or sense. *Village of Cairo v. Bodine Contracting Co.*, 685 S.W.2d 253, 264[20] (Mo.App. W.D.1985).

█ The stated purpose of section 00810 of the Specifications is to supersede such general conditions of an AIA Document A201 as are specifically supplanted by the Specifications. One condition is specifically identified in paragraph 7.9.1 of the Specifications,

i.e., settlement by arbitration in accordance with "Construction Industry Arbitration Rules of the American Arbitration Association." Paragraph 7.9.1 provides that the reference to settlement by arbitration shall be deleted, and all claims or disputes will be settled by the courts of Missouri.

Had Contractor established in the trial court that the alleged arbitration provision appears in Document A201 (1987), this court holds the parties' contract could have been reasonably understood to mean that by reason ·of section 00810 of the Specifications, paragraph 7.9.1 of the Specifications supplanted the alleged arbitration provision. Such a construction would have recognized both the alleged arbitration provision and paragraph 7.9.1 (by replacing the former with the latter). This court holds such a construction would have been proper.

Given what the parties placed before the trial court, this court holds the trial court did not err in denying Contractor's application to compel arbitration.[7]

The trial court's order is affirmed.

GARRISON, P.J., and PREWITT, J., concur.

---

7.  The trial court's cryptic order yields no clue as    to the rationale for the ruling.