

# Missouri Court of Appeals

## Southern District

### Division One

HERION COMPANY,          )
                                              )

      Plaintiff-Respondent,     )
                                              )

v.                               )      No. SD33512
                                            )      Filed: February 6, 2017

TANEY COUNTY, MISSOURI,   )
                                              )

      Defendant-Appellant.     )

### APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Honorable Mark Orr, Circuit Judge[1]

## **REVERSED AND REMANDED**

     Following a jury trial, Taney County (the County) appeals from a judgment in favor of Herion Company (Herion), an excavating contractor. Herion sued the County for damages arising from an alleged breach of a road construction contract. Prior to trial, the trial court granted Herion's first motion for partial summary judgment. Via this ruling, the trial court decided there was a conflict between two key provisions of the contract

---

[1] Judge Orr died after judgment was entered, and the case was assigned to the Honorable Michael Cordonnier. Thereafter, the case was transferred by agreement to Greene County.

governing the performance and payment for additional work.[2]  According to the trial court, this conflict meant:  (1) the provision specific to the work performed, Job Special Provision 2.2 (JSP 2.2), was controlling over the more general provision concerning payment for additional work, JSP 1.13; and (2) the County, therefore, could not enforce the JSP 1.13 payment provision.

The County presents eight points in this appeal, but we need address only the first because it is dispositive.[3]  In Point 1, the County contends the trial court erred by granting Herion's first motion for partial summary judgment.  The County argues that:  (1) the JSP 1.13 payment provision was not in conflict with the JSP 2.2 additional work provision; (2) the trial court's ruling was a misinterpretation of the contract and ignored applicable statutes governing payment for county road work; and (3) this erroneous ruling prevented the County from being able to defend itself at trial.  We agree.  Accordingly, the judgment is reversed, and the matter is remanded for further proceedings.

### Procedural and Factual Background

The material facts relevant to the County's first point are undisputed.  This case arose from the County's "Casey Road Improvements" project in 2008 that resulted in discovery of unsuitable subgrade, requiring extensive "subgrade stabilization using shot

---

[2]  *Hayes Drilling, Inc. v. Curtiss-Manes Constr. Co., Inc.*, 715 S.W.2d 295, 299 (Mo. App. 1986) describes a distinction, sometimes important in construction cases, between "extra" work and "additional" work.  We agree with Herion that the distinction is not in play here (which is one of the reasons that Herion's reliance on *Hayes* is misplaced), so we have used "extra" and "additional" interchangeably in this opinion without regard to any technical difference.

[3]  The record in this case is voluminous.  In addition to the briefs and exhibits at trial, the record includes:  (1) a 34-volume legal file, several volumes of which are in two parts; (2) two supplemental legal files; and (3) three transcript volumes.  Together, these files and volumes consist of over 7,000 pages.

2

rock" (SSUSR). The bid form for SSUSR limited the quantity to 5 cubic yards, and Herion bid a unit price of $65 per cubic yard, totaling $325, for that line item of the bid.

In January 2008, the parties entered into a written contract (Contract) in which the "County Commission" agreed to pay "the Contractor" Herion "$1,873,989.50 … as full compensation for the performance of work embraced in this contract, subject to adjustment as provided for changes in the quantities by means of approved change orders."[4] The Contract price included $325 for 5 cubic yards of SSUSR work.

In late March 2008, Herion discovered unsuitable subgrade and began SSUSR work in early April. By April 22, 2008, Herion used over 4,500 cubic yards of SSUSR, which amounted to $292,510 of SSUSR work. At that point in time, the County first learned of the additional SSUSR work and materials. The County then directed its project engineers, Great River Engineering (GRE), to stop the SSUSR work on that phase of the project and schedule further discussion of the issue. It is undisputed that, prior to performing the SSUSR work, Herion did not: (1) obtain written permission from GRE authorizing Herion to proceed with the SSUSR work above the 5 cubic yards included in the bid form; or (2) seek written authorization from the County to perform the additional work or to use additional materials for SSUSR. On April 30th, the parties resolved the issue and agreed to "Addendum No. 2." Therein, Herion agreed to amend its unit price to $52 per cubic yard for all past and future SSUSR work on the project and was paid accordingly. Ultimately, Herion was paid $685,000 for 13,500 cubic yards of SSUSR work instead of $325 for 5 cubic yards bid in the original contract.

---

[4] We note that the County Commission, via its three Commissioners, executed the Contract. In this opinion, we refer to the County and the Commission interchangeably.

3

In December 2009, Herion filed the underlying lawsuit seeking to set aside Addendum No. 2. Herion's first amended, two-count petition generally alleged, *inter alia*, that: (1) the County breached the Contract by paying the reduced price for SSUSR after agreeing to pay $65 per cubic yard; (2) the SSUSR work did not require a change order prior to completing the work; and (3) the County wrongly informed Herion that a prior change order was required and that Herion did not obtain proper authorization before performing the SSUSR work. Count I alleged that Addendum No. 2 was not binding "because it was signed by Herion under duress" and requested damages for the difference in price. Count II sought damages for the delay in work, and both counts requested prejudgment interest. As an affirmative defense in the County's answer, the County alleged, *inter alia*, that Herion breached the Contract by failing to obtain the required written approval prior to undertaking additional SSUSR work.

Thereafter, Herion filed 12 motions for partial summary judgment. In December 2011, a master was appointed to rule on these motions pursuant to Rule 68.01.[5] In the master's first report, the master found in favor of Herion on its first motion for partial summary judgment. That motion was directed toward two key Contract provisions. In April 2013, the trial court adopted the master's first report in its entirety. Via that ruling, the trial court adopted the master's recommended ruling to grant Herion's first motion for partial summary judgment, which posited that there was a conflict between the JSP 1.13 payment provision and the JSP 2.2 additional work provision. The trial court decided that the provision specific to the work performed, JSP 2.2, controlled over the more general provision concerning payment for additional work, JSP 1.13, which required written

---

[5] All references to rules are to Missouri Court Rules (2015). All references to statutes are to RSMo Cum. Supp. (2007) unless otherwise specified.

4

authorization before proceeding with the additional work.[6]  The trial court also granted

Herion's other 11 motions for partial summary judgment, which further narrowed the

issues to be tried.[7]

In February 2014, the case was tried to a jury on the issues in Herion's two-count

petition to set aside Addendum No. 2 due to duress and to assess Herion's alleged damages.

Counsel for the County twice asked the trial court to reconsider its rulings on the motions

for summary judgment – the first motion for partial summary judgment, in particular – but

the court declined to do so.  As a result, the County was prevented from arguing contract

or statutory defenses to Herion's claim to set aside Addendum No. 2 based upon alleged

duress.[8]

---

[6]  In opposing Herion's first motion for partial summary judgment, the County argued that:  (1) there was no conflict between the two provisions that negated the requirement that Herion obtain written authorization prior to performing the additional SSUSR work in excess of that contained in the Contract; and (2) both the Contract and Missouri law required Herion to obtain an order from the County prior to performing the additional SSUSR work.

[7]  The trial court ruled in Herion's favor on 12 partial summary judgment motions: (1) JSP 2.2 controls over JSP 1.3; (2) JSP 2.2 complies with § 432.070; (3) JSP 2.2 complies with § 229.050 RSMo (2000); (4) JSP 2.2 controls over Technical Specification 3.08; (5) JSP 2.2 complies with § 50.660; (6) denying the County's breach of contract claims/defenses; (7) denying the County's claim/defense of "Money Had & Received"; (8) denying the County's claim/defense of unjust enrichment; (9) denying the County's claim/defense of mutual mistake; (10) denying the County's claim/defense of assumption of the risk; (11) denying the County's claim/defense of avoidance of fault and comparative fault; and (12) denying the County's claim/defense of clean hands.

[8]  The jury was not allowed to consider the County's defense that a prior change order was required.  Instead, the verdict-directing instruction on Herion's duress claim to set aside Addendum No. 2 required the jury to find for Herion if:  (1) the County either "threatened not to pay" Herion for the SSUSR work performed or "threatened to terminate" the Contract; (2) the County "acted wrongly"; (3) the County "caused financial distress" to Herion; and (4) Herion's "free will was thereby overcome, compelling [Herion] to agree to reduce the unit price for [SSUSR], when [Herion] would not have done so otherwise[.]" Herion's duress theory formed the basis for relief on both Counts I and II.  Once the jury found in Herion's favor on Count I, that same breach of the contract supported Herion's claim under Count II for damages resulting from the delay in work.

Finding in Herion's favor, the jury awarded Herion $356,058 damages under Counts I and II, plus $139,498 prejudgment interest, for a total award of $495,556. Thereafter, the County filed a motion for judgment notwithstanding the verdict or new trial, which included, *inter alia*, a claim that the trial court erred in granting Herion's first motion for partial summary judgment. This appeal followed. Additional facts will be included below as we address the County's first point of error.

**Standard of Review**

The issue raised by the County's first point is whether the trial court properly interpreted and applied the Contract. The proper interpretation of a contract is an issue of law, which we review *de novo*. ***Dry v. United Fire & Cas. Co., Inc.***, 420 S.W.3d 593, 594 (Mo. App. 2013); ***Strader v. Progressive Ins.***, 230 S.W.3d 621, 623 (Mo. App. 2007).

**Discussion and Decision**

In Point 1, the County contends the trial court erred by granting Herion's first motion for partial summary judgment because: (1) the court misinterpreted the Contract; and (2) the ruling violated applicable law. The following additional facts are relevant to this point.

The two key Contract provisions at issue are as follows. The first is JSP 1.13, which governs claims for additional compensation. In relevant part, this provision states:

1.13 CLAIMS FOR ADJUSTMENT

     If any conditions arise which in the Contractor's opinion will require him to make any claims or demands for *extra or additional compensation* above that fixed by the Contract, or on which he contemplates bringing claims for such extra compensation, *he shall promptly, and before incurring any expense, notify in writing the Engineer of the conditions and circumstances and that he proposes to make such claims.* The Contractor agrees that any claims made without such advance notice, and not presented in such manner as to enable the Engineer to observe conditions as they occur and to verify expenses as they occur and to determine with certainty the correctness of such claims and of the

6

expenses involved, are waived and shall be null and void. *No extra compensation shall be awarded in any event without prior written approval of the Chief Engineer or Administrator.* The Contractor shall have a maximum of ten percent (10%) markup on materials and subcontractors for overhead, profit and coordination.

(Emphasis added.) Thus, at a minimum, JSP 1.13 requires Herion to obtain "prior written approval" to be compensated for additional work.

The second Contract provision at issue is JSP 2.2. This provision, which addresses subgrade stabilization, states:

2.2 <u>SUBGRADE STABILIZATION</u>

Should the existing subgrade prove to be unsuitable, the Contractor shall perform one of the following stabilization measures with the method used depending on the depth of the unsuitable subgrade.

<u>SUBGRADE STABILIZATION USING EARTH FILL.</u> Where it is determined the depth of unsuitable subgrade is twenty-four (24) inches or less, the unsuitable subgrade shall be removed, disposed of and replaced using material and compaction methods stated in these Special Provisions for Embankment in place. The volume of unsuitable subgrade removed will be measured to the nearest cubic yard determined by field measurement of the hole by the Owner. This measurement shall be completed prior to filling the area. Payment shall be made at the Contract unit price for SUBGRADE STABILAZATION USING EARTH FILL which shall cover the removal and disposal of unsuitable subgrade and the procurement, hauling and placement of replacement material.

<u>SUBGRADE STABILIZATION USING SHOT ROCK</u>. Where it is determined the depth of unsuitable subgrade is greater than twenty-four (24) inches, the unsuitable subgrade shall be removed to a depth of twenty-four (24) inches, disposed of and replaced using a twenty-four (24) inch thick layer of four (4) to six (6) inch crushed limestone containing minimal fines. The layer of shot rock shall be compacted by means of two passes of a dozer, D8 or larger. The volume of unsuitable subgrade removed will be measured to the nearest cubic yard determined by field measurement of the hole by the Owner. This measurement shall be completed prior to filling the area. Payment shall be made at the contract unit price for SUBGRADE STABILIZATION USING SHOT ROCK which shall cover the removal and disposal of unsuitable subgrade and the procurement, hauling and placement of replacement material.

The final actual quantities of Subgrade Stabilization Using Earth Fill and Subgrade Stabilization Using Shot Rock will be compared with the *estimated plan quantities* and the contract quantities of each item shall be

adjusted, overrun or underrun, by means of *change order* using the respective contract unit price. There shall be no adjustment to the contract unit price of these items whether the quantity is zeroed out, underrun, or overrun.

(Emphasis added.) The parties agree there were no "estimated plan quantities" for SSUSR in the Contract other than the quantity of 5 cubic yards in the bid form. "Change Order" is defined by the Contract as "[a] written order from the engineer to the contractor, as authorized by the contract, directing changes in the work as made necessary or desirable by unforeseen conditions or events discovered or occurring during the progress of the work." Neither party anticipated the extent of unsuitable subgrade discovered on the job.

In Herion's first motion for partial summary judgment, Herion argued that JSP 1.13 and JSP 2.2 were in "direct conflict" because both sections have different "'triggering mechanisms' for when each section would potentially be applied to SSUSR." Herion argued that JSP 2.2 allowed that "*merely the existence* of unsuitable subgrade" at the work site was sufficient to authorize Herion to perform additional SSUSR work, no matter what the Contract quantity and "regardless of whether the quantity is underrun, overrun or zeroed out." On the other hand, JSP 1.13 directs Herion to follow its terms when, in Herion's opinion, conditions arise that require Herion to make a claim for additional compensation. Therefore, Herion argued, and the trial court agreed, that because "it is not possible for both sections to apply" the specific JSP 2.2 "controls over the general … and *pro tanto* nullifies JSP 1.13 as to SSUSR."

As noted above, the County contends the trial court erred by deciding that JSP 1.13 was nullified due to conflict and could not be applied. According to the County, the requirement in JSP 1.13 that Herion obtain written approval prior to performing work for

8

which Herion intended to seek additional compensation:  (1) did <u>not</u> conflict with any term of JSP 2.2; and (2) complied with the mandatory requirements of § 229.050.5.[9]  We agree.

"It is the primary rule of construction of contracts that a contact must be construed as a whole, giving effect to every part, if it is fairly and reasonably possible to do so, and to thus determine the true intention of the parties." *AJM Packaging Corp. v. Crossland Constr. Co., Inc.*, 962 S.W.2d 906, 912 (Mo. App. 1998). "Each term of a contract is construed to avoid a result which renders other terms meaningless; a construction which attributes a reasonable meaning to all the provisions of the agreement is preferred to one which leaves some of them without function or sense." *Id*.; *see also* ***Tuttle v. Muenks***, 21 S.W.3d 6, 11-12 (Mo. App. 2000).  We interpret the words used in a contract as having their common and ordinary meaning, unless the context makes clear that a technical or special meaning was intended or unless the words used have a special meaning in the parties' trade or business.  ***State ex rel. Vincent v. Schneider***, 194 S.W.3d 853, 859-60 (Mo. banc 2006).

The Contract also contained the following provision:

<u>Laws and Regulations</u>:  The bidder's attention is directed to the fact that all applicable State laws, municipal ordinances, and the rules and regulations of all authorities having jurisdiction over construction of the project shall apply to the contract throughout, and they will be deemed to be included in the contract the same as though herein written out in full.

The construction of a public road by a county is generally governed by Chapter 229.  One important provision is § 229.050.5, which addresses a county's liability for additional work or material and requires that the cost be agreed upon in writing before such work shall apply.  In relevant part, this statute states:

The bidder must agree that before the county or political subdivision shall be liable for any additional work or material, the county or political

---

[9]  References to § 229.050 are to RSMo (2000).

> subdivision must first order the same, and the cost thereof must be agreed upon in writing and entered of record before such additional work shall apply in case of omissions, deductions or changes, and the unit prices shall be the basis of the values of such changes.

*Id*. This statute, like §§ 432.070 and 50.660 (contracts of counties must be in writing), and other state laws at issue herein, aim to control costs for public works and protect governmental entities from unauthorized expenditures. *See France v. Podleski*, 303 S.W.3d 615, 618 (Mo. App. 2010); *see also Withers v. City of Lake St. Louis*, 318 S.W.3d 256, 263-64 (Mo. App. 2010).

Viewing the Contract as a whole, as we must, we perceive no conflict between JSP 1.13, requiring written approval prior to performing additional work, and JSP 2.2, which addresses subgrade stabilization. Nothing in JSP 2.2 authorized Herion to perform additional SSUSR work *without* first obtaining a written change order. The trial court's decision to completely nullify JSP 1.13 and interpret JSP 2.2 as *automatically* authorizing additional work stripped the County of any ability to control costs in the Contract. Except for the bid price of $65 per cubic yard, Herion's interpretation effectively rendered meaningless every number associated with SSUSR, including the quantity of 5 cubic yards, the total bid amount of $325 and the total Contract cost of $1,873,989.50. The total Contract cost was specifically agreed upon by the parties "as full compensation for the performance of the work embraced in this contract, subject to adjustment as provided for changes in the quantities by means of approved change orders." JSP 1.13 provided the means for such adjustment. Giving effect to JSP 1.13 and requiring written approval *prior* to performing additional work comports with the primary rule of construction that a contract must be construed as a whole, giving effect to every part, if it is fairly and

10

reasonably possible to do so. *AJM Packaging Corp.*, 962 S.W.2d at 912.[10] The County argues, and we agree, that Herion's attempt to compare the relevant Contract provisions one at a time, in isolation, caused the trial court to review those provisions out of proper context, thereby disregarding the intent and meaning of the Contract when read as a whole. *See Tuttle*, 21 S.W.3d at 11-12 (terms of a contract must be reviewed as a whole, not in isolation).

In addition, JSP 1.13's requirement that "[n]o extra compensation shall be awarded in any event without prior written approval" was necessary in order for the Contract to comply with § 229.050.5. As noted above, this subdivision of the statute requires that "before the county … shall be liable for any additional work or material, the county … must first order the same, and the cost thereof must be agreed upon in writing …." *Id*. The Contract must be interpreted in light of that statute's requirement.[11]

---

[10] The County also points to another Contract provision, Technical Specification 3.08 (TS 3.08), that gives effect to both JSP 2.2 and JSP 1.13. In relevant part, TS 3.08 provides:

> APPROVAL OF SUBGRADE
> A.  Notify Engineer when excavations have reached required subgrade.
> B.  If Engineer determines that unsatisfactory soil is present, continue excavation and replace with compacted backfill or fill material as directed.
> *1. Additional excavation and replacement material will be paid for according to Contract provisions for changes in the Work.*

(Emphasis added.) TS 3.08 was the subject of Herion's fourth motion for partial summary judgment, in which Herion argued JSP 2.2 "controls payment of SSUSR over Technical Specification 3.08 …." See footnote 6 of this opinion, *supra*.

[11] *See, e.g.*, *Thomas v. Schapeler*, 92 S.W.2d 982, 984-85 (Mo. App 1936) (contractor's failure to comply with statutory procedures "made the county's contract unenforceable against it"); *see Jablonsky v. Callaway County*, 865 S.W.2d 698, 700-01 (Mo. App. 1993) ("counties are permitted to be bound by contracts only when the contract is entered into in compliance with express statutory provisions and persons contracting with a county are held to know the law and that contracts which are made without complying with the law are void"); *see also Hillside Securities Co. v. Minter*, 254 S.W.

11

Herion's "triggering mechanism" argument – *i.e.*, that JSP 2.2 authorized Herion's unanticipated SSUSR work and pay without prior written approval by the County – thus fails as contravening *both* the statutory mandate in § 229.050.5 *and* JSP 1.13's clear Contract terms.[12] Herion was not entitled to a partial summary judgment on this legal issue, so the trial court erred in granting Herion's first motion for partial summary judgment.

As previously mentioned, the trial court's ruling granting Herion's first motion for partial summary judgment prevented the County from arguing contract or statutory defenses to Herion's claim to set aside Addendum No. 2 due to duress. "The central question with respect to duress is whether, considering all the surrounding circumstances, one party to the transaction was prevented from exercising his free will by the threats or wrongful conduct of the other." *Andes v. Albano*, 853 S.W.2d 936, 942 (Mo. banc 1993) (internal quotation and citation omitted); *see Schmalz v. Hardy Salt Co.*, 739 S.W.2d 765, 768 (Mo. App. 1987) ("to claim duress in avoiding a contract a person must be so oppressed from the wrongful conduct of another as to deprive him of free will"). "Whether the facts alleged are sufficient to support a claim of duress is a question of law for the court." *Slone v. Purina Mills, Inc.*, 927 S.W.2d 358, 370 (Mo. App. 1996). Herion alleged that the

---

188, 193 (Mo. banc 1923). As noted previously, § 229.050.5 was also incorporated into the Contract in the "Information for Bidders" provision stating that all applicable law "shall apply to the contract throughout, and they will be deemed to be included in the contract the same as though herein written out in full."

[12] Herion's reliance on *Hayes*, 715 S.W.2d 295, to support this argument is misplaced. First, *Hayes* involved the proper interpretation of a school construction contract. The contract issue was whether Hayes' claim was one for "extra" versus "additional" work, which is not an issue in the case at bar. See footnote 1 of this opinion, *supra*. Second, *Hayes* did not involve the issue of how mandatory statutory requirements imposed upon a construction contract affect the interpretation and application of the contract. Therefore, *Hayes* is factually distinguishable and provides no support for Herion's argument.

County's wrongful conduct consisted of informing Herion that a change order was required prior to performing the SSUSR work. Based on our resolution of Point 1, however, the County's conduct was not wrongful. Instead, it was based upon a correct interpretation and application of the Contract. Therefore, Herion's duress claim was tried on a faulty legal premise. It is well settled that "[c]onduct cannot constitute duress unless it is wrongful; it is not duress to do, or to threaten to do, what one has a right to do." **Slone**, 927 S.W.2d at 371; *see also* **Gott v. First Midwest Bank of Dexter**, 963 S.W.2d 432, 440 (Mo. App. 1998) (it is never duress to do that which a party has a legal right to do).

The County's first point is granted. As noted above, Herion presented 11 other motions for partial summary judgment that were ruled in Herion's favor. The trial court's error in granting Herion's first motion for partial summary judgment had a domino effect that inexorably led to the serial granting of Herion's subsequent motions for partial summary judgment. Thus, our granting of the County's first point necessitates reversal of the entire judgment (including all of the partial summary judgments) and a general remand for further proceedings consistent with this opinion. *See* **Welman v. Parker**, 391 S.W.3d 477, 483 (Mo. App. 2013). The County's other points are moot and need not be addressed.

The judgment is reversed, and the cause is remanded for further proceedings consistent with this opinion.


JEFFREY W. BATES, P.J. – OPINION AUTHOR

DANIEL E. SCOTT, J. – CONCUR

MARY W. SHEFFIELD, C.J. – CONCUR

13